Ellen Coons BRAXTON, as Administratrix of the Estate of E. J. Coons, Deceased, Appellant,

v.

Sterling HOLLOWAY and Sun Valley Lodge, Inc., Appellees.

No. 16300.

United States Court of Appeals Fifth Circuit.

Aug. 8, 1957.

———◇———

Carloss Wadlington, Turner M. King, Ada, Okl., Gene T. Stone, Dallas, Tex., for appellant.

Luther Hudson, Hudson, Keltner & Sarsgard, Fort Worth, Tex., for appellees.

Before RIVES, JONES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

Ellen Coons Braxton as administratrix of the estate of her former husband, Ed J. Coons, sued Sterling Holloway and Sun Valley Lodge, Inc., a dissolved corporation for an accounting on an alleged contract between Coons and Holloway concerning the management, operation and ownership of Sun Valley Lodge Motel near Abilene, Texas. The case was tried to the court without a jury. After hearing the testimony, the district court made its findings of facts from which it concluded that judgment should be entered for the defendants. Appellant insists that the district court erred in admitting incompetent evidence and that its findings of fact should be set aside as clearly erroneous.

Holloway is a lawyer and chairman of the board of directors of a life insurance company. His company had handled construction loans or interim financing for builders in West Texas through its mortgage loan department. It diverted its investments to another program and closed down that department. Shortly thereafter, Thurman Cole, who had been in charge of the mortgage loan department, told Holloway that

" * * * he had assured a man by the name of Delaney we would handle for him interim financing for the construction of a motel at Abilene and that the man had a permanent loan commitment from the American National and that if we did not arrange in some manner to assist him in it we would have somewhat left the man in an embarrassing position and under difficulties."

Accordingly, Holloway personally guaranteed a loan that Delaney secured from the Fort Worth National Bank. Delaney became unable to make the payments on that loan or to complete the motel. Holloway advanced an additional $20,000 and had title to the motel property transferred to a trustee subject to a first lien in the amount of $60,000 in favor of the Bank and a second lien for $20,000 held by Holloway personally.

Holloway desired to rid himself of the motel business as soon as possible. He began searching for an experienced and efficient operator. Cole recommended Coons who had been successfully engaged in the motel business for some fifteen years, but had had some marital troubles with a former wife and for a while became addicted to alcohol. Holloway and Coons reached an understanding reduced to letter form by Holloway and accepted by Coons on October 2, 1953.

The letter was to "serve as a memorandum of our understanding and agreement." It recited the liens against the property in the sum of $80,000. Coons was to

"* * * assume the responsibility and duties of management and operation of this property, and subject to your carrying out this agreement, you will have and own 37½% interest in the equity in the property, over and above the $80,000.00 lien indebtedness against it."

Holloway was to retain the right to decide whether to incorporate the property and whether to continue to hold it as a long-term investment or to "build up the business where it is possible to make a sale of the property." A substantial part of the benefits accruing to Coons for his services "will be the realization of your interest in the property." In addition, Coons was to be paid a salary to be agreed upon from time to time, for the present to be $400 per month. The letter concluded as follows:

"This entire agreement shall be subject to and conditioned upon your fully and satisfactorily carrying out your agreement to diligently and properly operate and manage this property and supervise its operations. It may not be necessary for you to personally continue in the actual operation and management of the property, as we may determine later that employees can be obtained to do the actual work of running the lodge. However, in that event, and at such time, you shall continue to have complete responsibility of supervising its operation.

"It is not attempted in this letter to provide for all contingencies that may arise, but merely to set out our general agreement that you will take over the operation of the lodge, and put it on a profitable and sound financial basis of operation, under my direction."

While Coons and Holloway were still together at the time of the execution of the letter agreement, Holloway received a telephone call from Delaney to the effect that he thought he had a purchaser who would buy the property for $125,000 cash. Holloway and Coons then executed a supplemental letter to the effect that, if Holloway sold the property within the next eight days, their letter agreement was to be cancelled and, instead, Coons would receive for his services $3,000 plus his expenses. That prospective sale did not materialize.

Within a month, Holloway formed a corporation with a total capital stock of $1,000 to take title to the property. Coons was not ready to subscribe to his part of the stock. The incorporators were Thurman Cole, $50, Holloway's wife, $50, and Holloway, $900. Another letter was executed stating in part:

"Each one of us is contributing or allowing to Thurman Cole 2½%, or a total of 5% in the corporation, for which he will reimburse me in the amount of $50.00. This reduces the stock which you will have to 35%, for which, sometime at your convenience, you will reimburse me in the amount of $350.00."

Holloway and Cole testified that Coons was not ready to subscribe to the $350 stock because he said, "I don't have the money to spare, and then too, I would like to look at this operation for a while longer before I will know what the situation is." Holloway further testified that it was understood that, when Coons did get his stock, "we will have to have a more specific agreement about your ownership about it, or it will have to be escrowed or something of that sort."

On December 10, 1953, after Coons had been operating the motel properties for slightly more than two months, he was accidentally shot and killed. He left surviving his widow and a seventeen year old son by his prior marriage.

Under a verbal arrangement, the terms of which are in dispute, Mrs. Coons stayed on and managed the motel for four or five more months with diligence and with considerable ability but at a net loss. The property was then sold for a total consideration of $121,503.38 payable as follows: $25,000 cash, $58,-503.38 by assumption of the first mortgage, and a second lien note to Holloway for $38,000. Holloway remained personally liable for the first mortgage indebtedness, for which he had also pledged, as collateral, stock individually owned, worth some $70,000 and which is to remain so pledged until that indebtedness is paid down to $45,000. The market value of Holloway's second lien note of $38,000 would not exceed fifty cents on the dollar. Out of the $25,000 cash purchase price, plus the small bank accounts of Sun Valley Lodge amounting to $330.-53, a total of $18,825.42 went to pay current indebtedness of the motel, leaving only $6,505.11 for distribution to Cole and Holloway.

The salary paid to Mrs. Coons during the months she managed the property, had been only one-half of that paid her former husband, or $200 per month. When the property was sold, Holloway at first agreed to pay her $1,500 more, "as a bonus and additional compensation for your services, and in termination of our agreement pertaining to your management of the property." Immediately after accepting that, she wrote Holloway a letter expressing her dissatisfaction. He then had another meeting with her as the result of which he paid her an additional one thousand dollars, and she and her then husband signed and acknowledged the following release:

"Memorandum To Sterling Holloway:

"This will acknowledge receipt of $2,500.00, $500.00 of which is represented by cancellation of a loan made to Ellen Coons Braxton, and $2,000.00 being in cash, which is hereby accepted in full payment for all services, and all claim and interest of Ellen Coons Braxton of every nature whatsoever against Sterling Holloway, Sun Valley Lodge, and the proceeds of the sale of such lodge at Abilene, Texas.

"Ellen Coons Braxton,
"E. W. Braxton."

■ Most of the oral testimony was admitted without objection. Some questions were objected to on the ground that they attempted to vary the terms of a written agreement. The written agreement showed on its face that it was incomplete and the testimony was not inconsistent with the part which had been reduced to writing. Clearly, it was admissible. 17 Tex.Jur. § 366, p. 817.

■ A careful reading of the record leaves us under the firm conviction that the findings of the district court [1] were

1. In part as follows:

"(c) That the alleged contract between E. J. Coons and Sterling Holloway, dated October 2, 1953, and as amended November 13, 1953, being the letters attached to the Original Complaint herein, was not intended by the parties thereto as being a final, complete contract, but as a mere memorandum, which, if both parties were satisfied after a trial period, would later be reduced into a formal contract, and that E. J. Coons died before said trial period had been completed, and prior to the time when he, himself, was ready to be bound thereon.

"(d) That the agreement contemplated and it was understood that same would be for the personal services of E. J. Coons, and since such contract was for the personal services of E. J. Coons, such contract terminated on his death on December 10, 1953, and no cause of action thereon survived to his Estate or to his heirs, and the Defendants, and neither of them, have any liability on the contract referred to.

"(e) That the Defendant, Holloway, individually and in behalf of the dissolved corporation, did not agree that Mrs. Coons, individually or as representing the

not clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S. C.A. In fact, we fully agree with those findings and think that Holloway has been not only fair but generous in his dealings with the appellant. The judgment is therefore

Affirmed.

Estate of E. J. Coons, Deceased, could carry out the original contract of E. J. Coons referred to in the preceding paragraph hereof, and Defendants at all times recognized and stated that the E. J. Coons contract, if any he had, terminated with his death and there was no waiver of his personal performance and no agreement that the contract might be performed by Ellen Coons or any other persons.

"(f) That the release executed by Ellen Coons Braxton and her husband, dated May 29, 1954, under the terms of which she received $2,500.00 in settlement of all claims, is a valid and subsisting release and is binding upon Ellen Coons Braxton in her individual capacity and constitutes a complete bar and defense to any claim she might have by reason of services rendered by her in connection with the operation of the Sun Valley Lodge near Abilene, Texas. The Court finds that such settlement was fair and just, and same was not tainted in any degree by fraud or any other defect, and is in every respect valid and binding upon her in her individual capacity and binding upon her as an heir, creditor, or in any other capacity as a beneficiary of the Estate of E. J. Coons, or as a member of the Community Estate of Ellen Coons and E. J. Coons, deceased.

"(g) That the alleged contract properly construed did not give E. J. Coons any interest in the property as such, but merely provided that he might, by performing the obligations on him, earn an interest after he had, out of the profits of such operation, fully paid and discharged the indebtedness, totaling $80,-000.00, on October 2, 1953, and that such indebtedness was not discharged during his lifetime, and, as a matter of fact, was not discharged at the time of the sale to Ashburn, and has not been discharged at the present time.

"It is the opinion of the Court that under the pleadings, the evidence, the preceding findings and the law, the Plaintiff is not entitled to recover anything and that judgment should be rendered in favor of the Defendants."